438 S.E.2d 24

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Craig Eugene VANDEVENDER, Defendant Below, Appellant.**

No. 21606.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1993.

Decided Nov. 23, 1993.

James R. Fox, Jory & Smith, Elkins, for appellant.

Darrell V. McGraw, Jr., Atty. Gen., Stephen R. VanCamp, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

This action is before this Court upon an appeal from the September 2, 1992, order of the Circuit Court of Randolph County, West Virginia. The appellant, Craig Eugene Vandevender, was convicted of various misdemeanors, in violation of *W.Va.Code*, 61–2–9(b) [1978] (assault), *W.Va.Code*, 61–2–9(c) [1978] (battery), *W.Va.Code*, 17C–5–3(a) [1979] (reckless driving) and *W.Va.Code*, 17C–4–2 [1951] (failure to stop after an accident or leaving the scene of an accident).[1] The appellant received a one-year sentence which was suspended to ninety days confinement in the Randolph County Jail. On appeal, the appellant asks that this Court set aside the judgment of the circuit court and grant him a new trial. For the reasons stated below, the judgment of the circuit court is affirmed.

## I

On the evening of September 21, 1991, nineteen-year-old Matthew Salazar, and his sixteen-year-old friend, Scott Layton, travelled from Tunnelton, West Virginia to Philip Barbour High School, also in West Virginia, to watch a football game; but, on their way home from the game, they got lost. The two boys then came upon two other men stopped on the side of the road because their truck had mechanical difficulties. Salazar, the driver of the two boys' vehicle, agreed to give one of the men a ride in order to find help in exchange for directions home.

The details and the sequence of events shortly before the acts in question remain in dispute, but according to the transcript, the following transpired.

Salazar contended he resumed driving down the road with his two passengers when a truck, driven by the appellant, approached his vehicle from the opposite direction and the vehicles' side mirrors collided. Salazar then continued driving down the road, because the driver of the other vehicle did not turn around. However, approximately four to five miles down the road, Salazar saw in his rearview mirror the appellant's truck approaching rapidly. The appellant's truck hit Salazar's vehicle in the rear and then on the side, eventually knocking Salazar's vehicle into a culvert.

Once Salazar stopped his vehicle, the appellant confronted him. The appellant sub-

---

1. *W.Va.Code*, 61–2–9(b) and (c) [1978] provide:

(b) *Assault.*—If any person unlawfully attempts to commit a violent injury to the person of another or unlawfully commits an act which places another in reasonable apprehension of immediately receiving a violent injury, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail for not more than six months, or fined not more than one hundred dollars, or both such fine and imprisonment.

(c) *Battery.*—If any person unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail for not more than twelve months, or fined not more than five hundred dollars, or both such fine and imprisonment.

*W.Va.Code*, 17C–5–3(a) [1979] provides:

(a) Any person who drives any vehicle upon any street or highway, or upon any residential street, or in any parking area, or upon the ways of any institution of higher education, whether public or private, or upon the ways of any state institution, or upon the property of any county boards of education, or upon any property within the state park and public recreation system established by the director of the department of natural resources pursuant to section three [§ 20–4–3], article four, chapter twenty of this Code in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

*W.Va.Code*, 17C–4–2 [1951] provides:

The driver of any vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of such accident until he has fulfilled the requirements of section three [§ 17C–4–3] of this article. Every such stop shall be made without obstructing traffic more than is necessary. Any person failing to stop or comply with said requirements under such circumstances shall be guilty of a misdemeanor.

sequently reached inside the vehicle and he repeatedly hit Salazar in the face with a beer can and then with his fists. As a result, Salazar suffered a triple fracture to his nose, a fractured jaw and a broken tooth.

## II

Following an investigation of the entire incident, the appellant was indicted on the charges noted above.

At trial, the appellant offered testimony supporting his contention that he was not at the scene of the altercation, however, Salazar testified to the contrary.

The jury deliberated for approximately three and one-half hours and arrived at a verdict of not guilty on all counts. The prosecution then asked the court to poll the jury regarding the verdict. The court questioned the jurors as to whether each juror arrived at the verdict of not guilty. One juror responded to the question by stating that the verdict was not unanimous.

Thereafter, the following dialogue took place between the court and the jurors:

THE COURT: You must all agree as to a verdict of guilty or a verdict of not guilty.

THE JUROR: And if we don't?

THE COURT: Then if you don't—then you should so report. Let me ask you again—Mr. Miller, you're the foreman— was the jury unanimous in it's verdict?

MR. MILLER: No.

. . . .

(The court took a brief recess and excused the jury. The court discussed the matter with the respective counsel. After hearing arguments by counsel, the jury returned to the jury box and court reconvened.)

THE COURT: Ladies and gentlemen, I'm—I'm sorry to advise you of this, but the [l]aw contemplates that all twelve (12) jurors must be in agreement as to either a verdict of guilty or not guilty on each charge. So I'm going to have to return you to your deliberations until you are all in agreement. The [l]aw contemplates the concurrence of the twelve (12) minds as to either a verdict of guilty, or as to a verdict of not guilty. . . .

The jury, in an attempt to arrive at a unanimous verdict, then returned to their deliberations. Approximately one hour later, the jury arrived at a unanimous verdict of guilty on all counts. The court subsequently asked the jury if the verdict was unanimous, and the jury simultaneously nodded in the affirmative.

The appellant filed a motion for judgment of acquittal or a new trial which the trial court denied by order dated September 2, 1992. The appellant was sentenced to one year in the Randolph County jail. That sentence was partially suspended to ninety days confinement in the Randolph County jail.

It is from the September 2, 1992, order of the circuit court that the appellant appeals to this Court.

## III

The sole issue on appeal is the appellant's contention that the circuit court erred in denying the appellant's motion for a new trial based upon the matters surrounding the jury's verdict and the insufficiency of the evidence. However, this Court is of the opinion that there is no reversible error in this case.

Rule 31 of the West Virginia Rules of Criminal Procedure provides, in relevant part, that:

(a) Return. The verdict shall be unanimous. It shall be returned by the jury to the judge in open court.

. . . .

(d) Poll of Jury. When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

██ This Court discussed Rule 31 and its function in *State v. Tennant*, 173 W.Va. 627, 319 S.E.2d 395 (1984). In syllabus point 1 of *Tennant*, we focused on the unanimity of the verdict: "Rule 31 of the West Virginia Rules of Criminal Procedure, which is modeled after Rule 31 of the Federal Rules of

Criminal Procedure, mandates that the verdict in a criminal case be unanimous and provides a procedure for ensuring that the verdict is unanimous, i.e., the jury poll." In syllabus point 2, we adopted the federal procedure for handling situations when a juror admits in a poll to having reservations or simply disagreeing with the jury's verdict:

Federal cases have held that the language of Rule 31(d) of the Federal Rules of Criminal Procedure requires that when a juror indicates in a poll that he either disagrees with the verdict or expresses reservations about it, the trial court must either direct the jury to retire for further deliberations or discharge the jury. Although the rule does not explicitly so state, courts have also recognized that appropriate neutral questions may be asked of the juror to clarify any apparent confusion, provided the questions are not coercive. We adopt this procedure for Rule 31(d) of the West Virginia Rules of Criminal Procedure.

The appellant argues that although initially there was an apparent majority of jurors in favor of a verdict of not guilty, these same jurors, when asked to return to their deliberations, inappropriately compromised their position. The appellant further argues that such compromise occurred because the trial court failed to instruct the jury on the alternative for a "hung jury."

The state contends that the trial court complied with the standards set forth in *Tennant*, and thus, did not attempt to compromise the position of any juror. The state also asserts that the questions posed by the trial court to the juror(s) were neutral and not coercive. As the state further points out, the trial court then instructed the jury to return to their deliberations "until you are all in agreement;" and, if the jurors did not agree on a verdict of guilty or not guilty, the judge instructed them to report back to the court.

After reviewing the transcript, this Court is of the opinion that the trial court did not err in polling the jury and explaining to the jurors the necessity in arriving at a unanimous verdict. We find that the comments and questions posed by the court to the jury were neutral and were not coercive.

The appellant also challenges the trial court's ruling by suggesting that the evidence was insufficient to support the jury's finding of guilt. However, a thorough review of the record does not support that assertion.

The standard to be applied is set forth in syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

In this case, the prosecution presented sufficient evidence to support the jury's finding of guilt. Matthew Salazar, Scott Layton and Gary Skidmore, the second passenger, all testified that it was the appellant who beat Salazar. A forensic serologist, Ted A. Smith, testified that a hat left at the scene contained hair samples which matched hair samples subsequently taken from the appellant. Furthermore, one of the appellant's co-workers, Howell G. Burner, testified that, on the Monday after the incident in question, the appellant told him that he had hit another vehicle and ran it into a ditch; and, Mr. Burner also testified that the appellant admitted to striking the driver of the vehicle several times. Accordingly, we find that the evidence was sufficient to convince impartial minds of the guilt of the appellant beyond a reasonable doubt.

In conclusion, we are of the opinion that there is no reversible error in this case. For the reasons stated herein, the judgment of the Circuit Court of Randolph County is affirmed.

Affirmed.